OPINION
{¶ 1} Roneld Smith appeals from his conviction for carrying a concealed weapon, possession of cocaine, and possession of a firearm while under a disability pursuant to his no-contest pleas. After Smith was sentenced, he appealed and filed the videotape of a pretrial suppression hearing as the record in this case. Smith's *Page 2 
brief did not attach a transcript of the videotape as required by the appellate rule. See App. 9(A).
 {¶ 2} The facts developed at the suppression hearing are not in dispute and are set out in the parties' briefs.
 {¶ 3} Officer Jason Tipton, a five-and-a-half-year veteran of the Dayton Police Department, was conducting routine patrol duties in the early morning of June 25, 2007. Tipton observed a car traveling towards him on Delphos Avenue with its bright headlights on. Knowing that driving with bright headlights on can be a sign of drunk driving or a stolen vehicle, Tipton turned and began following the vehicle. The vehicle, identified as a four-door Pontiac Grand Prix, tried to get away from the officer. Tipton turned his lights and sirens on, and the vehicle sped up. The vehicle did not stop at any posted stop signs on Delphos and was driving very erratic and fast. Tipton was able to get close enough to the vehicle to get its license plate number, which was DWG2401.
 {¶ 4} The pursuit lasted four to five blocks, but Tipton was unable to get the vehicle to pull over. Tipton discontinued the chase and left the area, while the vehicle continued on Westwood Avenue. Tipton returned to the area five to ten minutes later in hopes the vehicle would be parked. While he was returning to the area, he was alerted by dispatch that a caller had seen the Grand Prix in the 900 block of Westwood, and that two men got out of the vehicle and were being chased by the police. The caller said one man got back in the car and drove away and the other was walking down Westwood. The caller, identified as a Mr. Jones, gave a partial plate number for the vehicle, which was DK2401 and described the man on foot as heavyset and wearing an open plaid shirt. *Page 3 
 {¶ 5} At the time of the call, Tipton was about three blocks from Westwood. When he turned onto Westwood, Tipton observed a man walking down the eight hundred block who was wearing an open, brown plaid shirt. The man was only about a half a block away from where the caller said he was. Tipton pulled up behind the man, later identified as Roneld A. Smith ("Smith"), and asked him to stop. Smith continued walking down Westwood and asked why. Tipton stopped, got out of his police cruiser and asked Smith to stop once again. Smith turned toward Tipton while his right hand moved towards his right hip. Tipton had experienced many weapon related arrests, and the right hip was a typical place where weapons are recovered. In this case, Smith had a fanny pack strapped around his shirt, and the actual pack was resting on his right hip. When he was turning around, Smith's hand went to the zipper on the fanny pack. Fearing the man was reaching for a weapon, Tipton drew his taser and told Smith to put his hands up. Smith complied with Tipton and walked towards the cruiser after being asked and put his hands on the hood of the cruiser. Tipton asked Smith if he had anything on him that Tipton should know about. When Smith said he did, Tipton then placed his hand on Smith's fanny pack and immediately felt a firearm inside.
 {¶ 6} After Tipton felt the gun, he asked dispatch to have another crew in the area respond. He then put Smith in handcuffs. Officer Matthew Dickey arrived to assist Tipton. By the time he arrived, Tipton already had Smith in the back of his cruiser. However, before placing him there, Tipton had unsnapped the fanny pack and laid it down on the ground. While Smith was being placed in the cruiser, he asked Tipton if he could have a cigarette because he was going away for fifteen years. Tipton said he did not understand what he meant by that, and Smith said he *Page 4 
would find out when he found his name.
 {¶ 7} Once Officer Dickey arrived, Tipton was able to search Smith's fanny pack. The front zipper had already been unzipped, and the officers found several live rounds of ammunition. They also found two loaded firearms; a revolver and a semi-automatic.
 {¶ 8} After getting Smith's personal information, the officers were able to run his name. They learned Smith had a felony warrant out for his arrest from Indiana. Tipton and Dickey then transported Smith to the Safety Building in downtown Dayton to speak to detectives. Tipton put the recovered property in the property room, and Dickey transported Smith to the county jail.
 {¶ 9} After Smith was indicted, he moved to suppress the evidence discovered by police on the basis that the police lacked articulable suspicion to stop him or to search him thereafter. The trial court overruled Smith's motion without elaboration.
 {¶ 10} In his sole assignment of error, Smith argues that the trial court erred in denying his suppression motion because Officer Tipton lacked articulable suspicion that he had committed any criminal activity and thus the evidence found as a result of the stop should be suppressed. The State argues that Officer Tipton had the right to stop Smith because he reasonably believed Smith was one of the men in the Grand Prix and he had a right to question him as to the identity of the driver who had just violated traffic laws. Alternatively, the State argues that Smith had no standing to object to the stop since there was an outstanding warrant for his arrest from Indiana, citing Dayton v.Click (October 5, 1994) Mont. App. No. 14328, discretionary appeal not allowed, 71 Ohio St.3d 1477 (1995). *Page 5 
 {¶ 11} Smith claims that his privacy rights were violated when he was unlawfully stopped by Officer Tipton. Smith, however, had no privacy or liberty interest at stake when he was stopped because an Indiana court had ordered that he be arrested pursuant to its warrant wherever he was found. In other words, Smith had no reasonable expectation of privacy in being free from being stopped arbitrarily by the police since the police were authorized and directed by an Indiana court to arrest him.Dayton v. Click, supra. A search conducted incident to that arrest would have disclosed the guns and drugs recovered by the police.
 {¶ 12} In State v. Jamison (May 11, 2001), Montgomery App. No. 18453, we held that an existing warrant could not cure a subsequent illegal search and seizure. We specifically overrule that opinion to the extent that it contradicts our holding in Dayton v. Click, supra. The assignment of error is Overruled. The Judgment of the trial court is Affirmed.
WOLFF. P.J., and FAIN, J., concur.
Copies mailed to:
Mathias H. Heck, Jr.
R. Lynn Nothstine
Rebekah Neuherz
 Hon. Michael T. Hall *Page 1