The STATE of Ohio, Appellant,

v.

WALKER–STOKES, Appellee.

[Cite as *State v. Walker–Stokes*, 180 Ohio App.3d 36, 2008-Ohio-6552.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 22554.

Decided Dec. 12, 2008.

Mathias H. Heck Jr., Montgomery County Prosecuting Attorney, and Carley J. Ingram, Assistant Prosecuting Attorney, for appellant.

Glen Dewar, for appellee.

GRADY, Judge.

{¶ 1} This appeal is brought by the state pursuant to Crim.R. 12(K) and R.C. 2945.67 from an order of the common pleas court granting defendant's Crim.R. 12(C)(3) motion to suppress evidence seized incident to his arrest on an outstanding warrant.

{¶ 2} Defendant was charged with having weapons while under disability and improper handling of a firearm in a motor vehicle. Both charges arose from a gun found in defendant's vehicle during an inventory search following his arrest on an outstanding warrant. The court suppressed that evidence on a finding that the stop that revealed defendant's identity as the person wanted on the warrant was itself illegal, because the officer who performed the stop lacked the reasonable and articulable suspicion to perform the stop required by *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889.

{¶ 3} In its written decision, the trial court made the following findings of fact:

{¶ 4} "Officer David Blackburn was on routine patrol on May 27, 2007 in the area of Dearborn and Route 35 when he was stopped at a traffic light behind a 1993 Chevrolet Blazer. When Officer Blackburn ran the license plate on the blazer he learned that the car was owned by a Karen Taylor. The car had not been reported stolen, but a 'FI' or field interview notation came back on his car computer indicating that if a black male was driving the vehicle, it was probably a Kurt Walker–Stokes. The 'FI' listed his social security number and indicated that Kurt Walker–Stokes had no driver's license. Officer Blackburn next ran the social security number of Mr. Stokes and again learned that his license was still under suspension and that he had a capias for his arrest. The officer also learned that Stokes was 5'9" tall and weighed 175 lbs. After following the Blazer

for approximately sixty more seconds Officer Blackburn initiated a stop of the vehicle and found the driver to be Kurt Walker–Stokes. Officer Blackburn also testified that the Chevy–Blazer did not violate any traffic laws. The officer testified that he decided to pull the vehicle over because he felt the physical descriptors of the Defendant matched the driver of the car (black male, 5'9", and 175 lbs.) The only opportunity Officer Blackburn had to match these descriptors to the Defendant was by observing him in the side mirrors of the Blazer. The view through the rear window was obstructed by a 'For Sale' sign. The field interview notation was over a year old."

{¶ 5} After determining that the driver was Walker–Stokes, Officer Blackburn arrested defendant on the outstanding warrant. An inventory search of Walker–Stokes' vehicle produced a weapon, which the trial court ordered suppressed.

## ASSIGNMENT OF ERROR:

{¶ 6} "The trial court erred in granting Walker–Stokes' motion to suppress."

{¶ 7} The trial court granted defendant's Crim.R. 12(C)(3) motion to suppress evidence on its conclusion that Officer Blackburn lacked a reasonable and articulable basis to suspect that defendant was the person for whom the arrest warrant of which the officer was advised was outstanding, which is required in order to permit the officer to stop defendant's vehicle to investigate that suspicion. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889. That conclusion was based on two findings the trial court made. The first is that Officer Blackburn had an insufficient opportunity to match the driver of the vehicle to the physical description of Walker–Stokes that the officer had been given. The second is that the officer's suspicion that the driver was Walker–Stokes was based on a police report that was stale and therefore lacking in reliability.

{¶ 8} Whether an investigative stop is reasonable must be determined from the totality of the circumstances that surround it. *State v. Freeman* (1980), 64 Ohio St.2d 291, 18 O.O.3d 472, 414 N.E.2d 1044. The totality of the circumstances are "to be viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold." *State v. Andrews* (1991), 57 Ohio St.3d 86, 87–88, 565 N.E.2d 1271, citing *United States v. Hall* (C.A.D.C.1976), 525 F.2d 857, 859; *State v. Freeman* at 295, 18 O.O.3d 472, 414 N.E.2d 1044.

{¶ 9} "In a motion to suppress, the trial court assumes the role of the trier of fact, and, as such, is in the best position to resolve questions of fact and evaluate the credibility of the witnesses. *State v. Clay* (1973), 34 Ohio St.2d 250, 63 O.O.2d 391, 298 N.E.2d 137. Accordingly, in our review, we are bound to

accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard." *State v. Retherford* (1994), 93 Ohio App.3d 586, 591, 639 N.E.2d 498.

{¶ 10} In order to perform a *Terry* stop of a person suspected of being wanted for criminal activity, the state has the burden to show that the officer making the stop acted in objective reliance on a flyer or bulletin, that the police who issued the bulletin or flyer possessed a reasonable suspicion justifying the stop, and that the stop that in fact occurred was not significantly more intrusive than would have been permitted the issuing department. *United States v. Hensley* (1985), 469 U.S. 221, 105 S.Ct. 675, 83 L.Ed.2d 604. We will consider those requirements in reverse order, in relation to the facts before us.

{¶ 11} When Officer Blackburn stopped defendant's vehicle, he promptly asked the driver whether he was Kurt Walker–Stokes, and defendant responded that he was. Defendant was then arrested. The stop was not significantly more intrusive than would have been permitted the department that issued the bulletin reporting that a warrant for Walker–Stokes was outstanding in order for it to determine that the driver of the vehicle was Walker–Stokes.

{¶ 12} The trial court's finding that the police report connecting Walker–Stokes to the vehicle lacked reliability because it was stale implicates the second *Hensley* factor: whether the police who issued the bulletin possessed a reasonable suspicion justifying the stop. In *United States v. Longmire* (1985), 761 F.2d 411, the Seventh Circuit wrote:

{¶ 13} "Unreasonable delays by issuing officers in updating the information contained in bulletins or flyers will not be sanctioned by this court. Such delays may render illegal stops and searches pursuant to those bulletins. Further, at some point in time, a reasonable police officer should suspect that the information he received from a bulletin might be stale and should check, if circumstances permit, the current status of the investigation before effecting a stop and search." Id. at 420.

{¶ 14} *Longmire* concerned those circumstances in which a stop or arrest was mistaken because another person had previously been arrested for the crime concerned, but the police agency failed to purge its bulletin that the wanted suspect was at large. That's not the case here. The warrant was for the arrest of Walker–Stokes, and Walker–Stokes had not been arrested. Officer Blackburn's failure to verify information that was arguably stale did not lead to a mistaken stop. Indeed, the information proved correct, avoiding the unreasonable intrusion that can result when police act on stale information.

{¶ 15} The trial court's finding that Officer Blackburn lacked a reasonable suspicion that the driver he saw matched the description of Walker–Stokes implicates the first *Hensley* factor: whether the officer acted in objective reliance on the bulletin provided him. *Terry* held that "it is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure or search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?" 392 U.S. at 21–22, 88 S.Ct. 1868, 20 L.Ed.2d 889.

{¶ 16} At the hearing on the motion to suppress, Officer Blackburn testified as follows concerning the action he took on the information he received:

{¶ 17} "Q. Okay. So you get this information that—I want to make sure that I understand it correctly—if there's another male driving the car, it's probably Kurt Walker–Stokes?

{¶ 18} "A. It said if there is a male driving this car, it is most likely Kurt Walker–Stokes, and gave his social security number.

{¶ 19} "Q. Okay. And what did you do at the time?

{¶ 20} "A. While I was observing the subject in front of me, I could see him—I could see him plainly in the side-view mirror. He was looking back at me. And I thought, well, maybe possibly I have this gentleman here. I could see him clearly, eye-to-eye in the side-view mirror, plus I could see the outline of him sitting in the driver's seat. I found—I could see no one else in the car.

{¶ 21} "So I took the social security number and I ran the social security number. The information that came back was on Kurt Walker–Stokes. It gave me information as far as driving status and it also gives us information if there's any outstanding warrants or capiases issued. It then showed me he has no driving privileges, and then it also shows me that a capias had been issued for his arrest through the City of Dayton.

{¶ 22} "Q. Okay. So there was a capias out for this Mr. Walker–Stokes?

{¶ 23} "A. Yes.

{¶ 24} "Q. Okay. Do you remember what those were?

{¶ 25} "A. He was about 5'9", one hundred and seventy-five pounds, born in '69, he's about 37 years of age, brown hair.

{¶ 26} "Q. And when you got those descriptors, you looked into the vehicle?

{¶ 27} "A. Well, I could see his form through the back window. It wasn't tinted. He was sitting up straight. I could see from his shoulders up, and I could see him clearly in the side-view mirror. Every time he looked over at me I

could look him in the eyes. I felt from his physical description and my experience that I possibly had Kurt Walker–Stokes here.

{¶ 28} "Q. Was it daylight at this time?

{¶ 29} "A. Yes.

{¶ 30} "Q. Okay.

{¶ 31} "A. It was twenty 'til six in the evening, I believe, and it was sunny.

{¶ 32} "Q. And were you directly behind the vehicle?

{¶ 33} "A. Yes, I was.

{¶ 34} "Q. Okay. Based on the information and your experience, did you attempt to make a traffic stop on the vehicle?

{¶ 35} "A. Yes, I did."

{¶ 36} Officer Blackburn's view of the driver through the vehicle's rear window was obscured by a For Sale sign posted there. The trial court found that the view of the driver Officer Blackburn said he had, via the vehicle's side mirror, was insufficient to support a reasonable suspicion that the driver was Walker–Stokes, in relation to the physical description of Walker–Stokes that Officer Blackburn had been given. The issue is whether the action Officer Blackburn then took was appropriate. LaFave writes:

{¶ 37} "Of course, it is important to consider not only the specificity of the identification, but also the extent to which the person stopped matched the available description. Stops sometimes must be made before there has been a point-by-point matching of all characteristics, and though such stops are not per se illegal the police are obligated to terminate them promptly should closer scrutiny of the suspect establish that he does not in fact fit the description." LaFave, Search and Seizure (4th Ed.), Section 9.5(i).

{¶ 38} An arrest warrant charges law-enforcement officers to arrest the person for whom the warrant was issued. R.C. 2935.02; Crim.R. 4(D). In performing their duty, officers may not engage in "conduct which is overbearing or harassing, or which trenches on personal security without the objective evidentiary justification which the Constitution requires." *Terry*, 392 U.S. at 15, 88 S.Ct. 1868, 20 L.Ed.2d 889. When determining whether a search and seizure was reasonable, the dual inquiry is "whether [it] was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." Id. at 20, 88 S.Ct. 1868, 20 L.Ed.2d 889.

{¶ 39} In view of the foregoing considerations, we believe that the trial court's finding that Officer Blackburn lacked a reasonable basis for purposes of the Fourth Amendment to stop defendant's vehicle presents difficulties. Howev-

er, we need not decide whether those difficulties rise to the level of reversible error.

{¶ 40} Subsequent to the trial court's decision granting defendant's motion to suppress, we held in *State v. Smith,* Montgomery App. No. 22434, 2008-Ohio-5523, 2008 WL 4688767, that *because, as a matter of law,* an outstanding arrest warrant operates to deprive its subject of the reasonable expectation of privacy the Fourth Amendment protects, the exclusionary rule does not apply to a search and seizure of the subject that would otherwise be illegal because of a *Terry* violation. Our holding in *Smith* is consistent with our prior decisions in *Dayton v. Click* (Oct. 5, 1994), Montgomery App. No. 14328, 1994 WL 543210, discretionary appeal not allowed (1995), 71 Ohio St.3d 1477, 645 N.E.2d 1257; *State v. Meyers* (May 31, 1995), Montgomery App. No. 14856, 1995 WL 328159, discretionary appeal not allowed (1995), 74 Ohio St.3d 1418, 655 N.E.2d 738; *State v. Ingram* (1998), 125 Ohio App.3d 411, 708 N.E.2d 782; and *State v. Pierson* (1998), 128 Ohio App.3d 255, 714 N.E.2d 461, discretionary appeal not allowed (1998), 83 Ohio St.3d 1452, 700 N.E.2d 334. To the extent that our more recent holdings in *State v. Jamison* (May 11, 2001), Montgomery App. No. 18453, 2001 WL 501942, and *State v. Ford,* 149 Ohio App.3d 676, 2002-Ohio-5529, 778 N.E.2d 642, are inconsistent with our holding herein, they are overruled. Therefore, applying that rule of *Smith* to the record in the present case, we find that the trial court erred when it granted defendant's motion to suppress evidence obtained in a search incident to defendant's arrest on a valid, outstanding warrant.

{¶ 41} The assignment of error is sustained. The suppression order from which the appeal was taken will be reversed, and the case will be remanded for further proceedings.

Judgment accordingly.

FAIN and WALTERS, JJ., concur.

SUMNER E. WALTERS, J., retired, of the Third Appellate District, sitting by assignment.

FAIN, Judge, concurring.

{¶ 42} I concur in the judgment and in the opinion for the court written by Judge Grady. I write separately merely to note that we have found the issue in this case—whether a police officer needs probable cause, or reasonable and articulable suspicion, to stop a person for whom an arrest warrant is, in fact, outstanding—to be troublesome. We first addressed this issue in *Dayton v. Click* (Oct. 5, 1994), Montgomery App. No. 14328, 1994 WL 543210, discretionary appeal not allowed (1995), 71 Ohio St.3d 1477, 645 N.E.2d 1257, reaching the same result we reach in this case. We have reached conflicting results on this

issue in subsequent cases. See, e.g., *State v. Jamison* (May 11, 2001), Montgomery App. No. 18453, 2001 WL 501942.

{¶ 43} Our latest holding on the issue of an otherwise unsupported stop of a person who is, in fact, the subject of an outstanding arrest warrant, is found in *State v. Smith*, Montgomery App. No. 22434, 2008-Ohio-5523, 2008 WL 4688767, in which we held that the stop is lawful, so that evidence obtained as a result of the stop is not subject to exclusion. Stare decisis requires us to follow the latest holding of our court on a legal issue unless there is a sufficiently compelling reason not to do so. *Wogoman v. Wogoman* (1989), 44 Ohio App.3d 34, 541 N.E.2d 128. I find this issue to be vexingly close. Consequently, I see no reason to depart from our latest holding in *State v. Smith*, 2008-Ohio-5523, 2008 WL 4688767.