[Cite as *State v. Wynn*, 2011-Ohio-1441.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

STATE OF OHIO                                        :

    Plaintiff-Appellee                        :         C.A. CASE NO. 24252

v.                                                                :         T.C. NO.    09 CR 218

KENNETH L. WYNN                                :            (Criminal appeal from
                                                                              Common Pleas Court)
    Defendant-Appellant                    :

                                                                   :

. . . . . . . . . .

**O P I N I O N**

Rendered on the ____25th____ day of ____March____, 2011.

. . . . . . . . . .

JOHNNA M. SHIA, Atty. Reg. No. 0067685, Assistant Prosecuting Attorney, 301 W. Third
Street, 5th Floor, Dayton, Ohio 45422
      Attorney for Plaintiff-Appellee

DANIEL J. O'BRIEN, Atty. Reg. No. 0031461, 1210 Talbott Tower, 131 N. Ludlow Street,
Dayton, Ohio 45402
      Attorney for Defendant-Appellant

. . . . . . . . . .

DONOVAN, J.

This matter is before the Court on the Notice of Appeal of Kenneth Wynn, filed

September 10, 2010. On February 17, 2009, Wynn was indicted on one count of possession

of crack cocaine (less than one gram) and one count of possession of heroin, both counts in

violation of R.C. 2925.11(A). Wynn filed a motion to suppress on October 19, 2009. A hearing was held on November 16, 2009, and the trial court sustained in part and overruled in part the motion, finding that the crack cocaine was subject to suppression. Wynn pled no contest to the remaining count of possession of heroin, and the trial court sentenced him to 12 months to be served concurrently with the sentence imposed in another matter, case number 2009-CR-3146.

The events giving rise to Wynn's arrest began on January 20, 2009, at approximately 10:30 p.m., when Dayton Police Officers Ryan Halburnt and Brian Deidrick, while on routine patrol on Salem Avenue, observed a black BMW with what the officers believed were illegally tinted windows. Halburnt testified that he has issued "hundreds" of window tint citations. Halburnt was unable to see inside the BMW, and relying upon his significant experience with window tint violations, he activated the cruiser's lights and made a traffic stop. Wynn was driving the BMW, and he was the only occupant of the vehicle. Halburnt advised Wynn of the suspected window tint violation and asked for his identification. Wynn stated that he did not have identification, and Halburnt asked him to step out of the car. After obtaining Wynn's permission, Halburnt patted him down for weapons and, finding none, placed him in the rear of his cruiser, without handcuffs, to ascertain his identity for the purpose of issuing the window tint citation. Wynn provided his social security number to Halburnt, and after performing a computer search, Halburnt learned that there were three outstanding warrants for Wynn's arrest. While Halburnt performed the computer search, Deidrick tested the tint of the windows with a tint meter and determined that the tint level was illegal. Halburnt testified that he had calibrated the tint meter on the

day of the incident.

Halburnt advised Wynn that he was under arrest and placed him in handcuffs. Halburnt cited Wynn for the window tint violation, and Wynn was also cited for not having a valid driver's license. Halburnt testified that Wynn subsequently pled guilty in municipal court to driving without a valid license. After Deidrick conducted an inventory search of Wynn's vehicle, Halburnt arranged to have it towed. In the course of the vehicle search, Diedrick found crack cocaine which the trial court suppressed.[1] Halburnt read Wynn his rights from a police department card, and Wynn indicated his understanding of those rights. Wynn agreed to talk to the officers, and they questioned him. The officers then transported Wynn to jail. In the course of a second pat down during processing at the jail, a plastic bag with 10 capsules of heroin was retrieved from Wynn's hat.

In its decision sustaining in part and overruling in part Wynn's motion to suppress, the trial court determined as follows: "Halburnt testified that he initiated the traffic stop based upon his observation that the vehicle had excessive window tint. His experience as an officer formed the basis of his judgment.

"When Wynn could not produce a driver's license, Halburnt was permitted to ask Wynn to exit the vehicle and to sit in the cruiser while Halburnt checked Wynn's identification in the onboard computer. Halburnt was also permitted to pat-down Wynn before placing him in the cruiser in the interest of officer safety. Upon running Wynn's information, it was revealed that Wynn had three active warrants for his arrest. Halburnt acted properly by arresting Wynn at that point.

---

[1]We note that the State did not appeal this determination.

"Halburnt's decision to impound the car was warranted because the car was obstructing traffic on a public street and because the sole occupant of the car was arrested. However[,] the Court is not persuaded that a search of the car was necessary. Given the fact that Wynn was under arrest and without means to re-enter his car, there was no reason to fear that Wynn would cause a threat to officer safety or destroy evidence. While the State argued at the motion hearing that the search was not a search incident to arrest, but rather an inventory search, the Court finds that the totality of the circumstances indicate that the search is most accurately characterized as a search incident to arrest. Under *Gant*, the search was not authorized and could have been postponed until the police were granted a search warrant. The crack cocaine discovered during the inventory search shall be suppressed.

"Halburnt properly *Mirandized* Wynn after the crack cocaine was discovered prior to asking him questions about the crack cocaine. Wynn did not challenge Halburnt's testimony that he understood each of his rights and * * * he willingly spoke with Halburnt and Deidrick. The discovery of the ten heroin capsules on Wynn's person at the jail shall not be suppressed because they were discovered during a routine pat-down during processing at the jail and after a proper arrest was executed."

We note that Wynn's brief addresses two separate indictments, case numbers 2009 CR 218 and 2009 CR 3146. The matters were not consolidated, however, and since case number 2009 CR 3146 is not before us, we will not address it. The instant matter involves the indicted charges of possession of crack cocaine and heroin in case number 2009 CR 218.

Wynn asserts one assignment of error as follows:

"THE TRIAL COURT PREJUDICIALLY ERRED IN NOT SUPPRESSING THE EVIDENCE THAT WAS FRUIT OF THE POISONOUS TREE - THE UNLAWFUL DETENTION OF DEFENDANT AFTER THE TIME AND REASON FOR THE STOP HAD ENDED."

According to Wynn, "the police violated Mr. Wynn's constitutional rights in patting him down and placing him in the rear of the cruiser where he was not free to leave simply to verify his identity."

"Appellate courts give great deference to the factual findings of the trier of facts. (Internal citations omitted). At a suppression hearing, the trial court serves as the trier of fact, and must judge the credibility of witnesses and the weight of the evidence. (Internal citations omitted). The trial court is in the best position to resolve questions of fact and evaluate witness credibility. (Internal citations omitted). In reviewing a trial court's decision on a motion to suppress, an appellate court accepts the trial court's factual findings, relies on the trial court's ability to assess the credibility of witnesses, and independently determines whether the trial court applied the proper legal standard to the facts as found. (Internal citations omitted). An appellate court is bound to accept the trial court's factual findings as long as they are supported by competent, credible evidence. (Internal citations omitted)." *State v. Purser*, Greene App. No. 2006 CA 14, 2007-Ohio-192, ¶ 11.

"The Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures. *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889. A traffic stop by a law enforcement officer must comply with the Fourth Amendment's reasonableness requirement. *Whren v.*

*United States* (1996), 517 U.S. 806, 116 S. Ct. 1769, 135 L.Ed.2d 89. The duration of a traffic stop may last no longer than is necessary to resolve the issue that led to the original stop, absent some specific and articulable facts that further detention was reasonable. *State v. Chatton* (1984), 11 Ohio St.3d 59, * * * ; *State v. Kerns* (Mar. 16, 2001), Montgomery App. No. 18439. 'When a law enforcement officer stops a vehicle for a traffic violation, the officer may detain the motorist for a period of time sufficient to issue the motorist a citation and to perform routine procedures such as a computer check on the motorist's driver's license, registration and vehicle plates. In determining if an officer completed these tasks within a reasonable length of time, the court must evaluate the duration of the stop in light of the totality of the circumstances and consider whether the officer diligently conducted the investigation.'" (Citations omitted). *State v. Wilkins*, Montgomery App. No. 20152, ¶ 10.

"An arrest warrant charges law-enforcement officers to arrest the person for whom the warrant was issued. R.C. 2935.02; Crim.R 4(D). In performing their duty, officers may not engage in 'conduct which is overbearing or harassing, or which trenches on personal security without the objective evidentiary justification which the Constitution requires.' *Terry*, 392 U.S. at 15, 88 S.Ct. 1868, 20 L.Ed. 889. When determining whether a search and seizure was reasonable, the dual inquiry is 'whether [it] was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place.' Id. at 20, 88 S.Ct. 1868, 20 L.Ed.2d 889." *State v. Walker-Stokes*, 180 Ohio App.3d 36, 2008-Ohio-6552, ¶ 38.

We have previously determined, "in *State v. Smith*, Montgomery App. No. 22434, 2008-Ohio-5523, 2008 WL 4688767, that *because*, *as a matter of law*, an outstanding arrest warrant operates to deprive its subject of the reasonable expectation of privacy the Fourth Amendment protects, the exclusionary rule does not apply to a search and seizure of the subject that would otherwise be illegal because of a *Terry* violation." *Walker-Stokes*, ¶ 40 (emphasis in original).

Here, the officers stopped Wynn's vehicle for an undisputed traffic violation, namely the illegal window tint. Because Wynn did not have any identification in his possession, the officers were justified in obtaining his identifying information and performing a computer search for the purpose of properly issuing him a citation. As the State asserts, Wynn consented to the initial pat down, and no evidence was discovered as a result thereof. There is nothing in the record to suggest that the length of the detention was unjustified or unduly prolonged. In the course of routine protocol, Halburnt learned of the outstanding arrest warrants. Due to the existence of the warrants, Wynn had no reasonable expectation of privacy and was subject to arrest. We conclude that the search incident to lawful arrest that produced the heroin was proper. In other words, pursuant to *Smith* and *Walker-Stokes*, evidence is not subject to suppression for an alleged *Terry* violation when the evidence was seized incident to arrest on an outstanding warrant, notwithstanding the fact that the stop led officers to discover the existence of the warrant.

Wynn's assigned error is overruled, and the judgment of the trial court is affirmed.

. . . . . . . . . .

GRADY, P.J. and FAIN, J., concur.

Copies mailed to:

Johnna M. Shia
Daniel J. O'Brien
Hon. Connie S. Price