[Cite as *State v. Adams*, 2011-Ohio-4008.]


IN THE COURT OF APPEALS OF MONTGOMERY COUNTY, OHIO

STATE OF OHIO                    :

    Plaintiff-Appellee           :      C.A. CASE NO. 24184

vs.                              :      T.C. CASE NO. 09CR3552

JAMES F. ADAMS                   :      (Criminal Appeal from
                                         Common Pleas Court)
    Defendant-Appellant          :

. . . . . . . . .

O P I N I O N

Rendered on the 12th day of August, 2011.

. . . . . . . . .

Mathias H. Heck, Jr., Pros. Attorney; Laura M. Woodruff, Asst.
Pros. Attorney, Atty. Reg. No.0084161, P.O. Box 972, Dayton, OH
 45422
    Attorney for Plaintiff-Appellee

Mark A. Deters, Atty. Reg. No.0085094, 371 West first Street,
Dayton, OH 45402
    Attorney for Defendant-Appellant

. . . . . . . . .

GRADY, P.J.:

{¶ 1} Defendant, James Adams, appeals from his conviction for

possession of heroin, less than one gram, R.C. 2925.11(A), which

was entered on Defendant's no contest plea after the trial court

overruled his motion to suppress evidence.  On appeal, Defendant

challenges only the trial court's decision overruling his motion.

FIRST ASSIGNMENT OF ERROR

{¶ 2} "THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO SUPPRESS, BECAUSE THE POLICE OFFICERS DID NOT HAVE LAWFUL CAUSE TO STOP APPELLANT."

{¶ 3} When considering a motion to suppress, the trial court assumes the role of the trier of facts and is therefore in the best position to resolve factual questions and evaluate the credibility of the witnesses. *State v. Roberts,* 110 Ohio St.3d 71, 2006-Ohio-3665. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. *Id.* Accepting those facts as true, the appellate court must then independently determine, without deference to the trial court's conclusion, whether those facts satisfy the applicable legal standard. *Id.*

{¶ 4} Defendant moved to suppress evidence of heroin police seized in a search of his vehicle in the course of an inventory search following Defendant's arrest. The trial court overruled the motion. The court found that officers had attempted to stop Defendant's vehicle for what they reasonably believed was a violation of R.C. 4511.28. That section prohibits passing upon the right of another vehicle unless (1) the other vehicle "is making or attempting to make a left turn" (2) "[u]pon a roadway with

unobstructed pavement of sufficient width for two or more lines of vehicles moving lawfully in the direction being traveled by the overtaking vehicle." *Id.* When the officers activated the lights and siren of their cruiser to effect the stop, Defendant did not stop. He instead proceeded through the next block, where another vehicle stopped him from proceeding further. The court found that when officers apprehended Defendant, they placed him under arrest for failure to comply with the order or signal of a police officer, R.C. 2921.331, which is a first degree misdemeanor.

{¶ 5} Defendant does not complain that the inventory search of his vehicle was illegal. Neither does he dispute that he failed to stop when the officers activated the lights and siren of their cruiser, or that he was unaware they had. Rather, Defendant argues that he committed no violation of R.C. 4511.28 that permitted the officers to stop his vehicle.

{¶ 6} "Where a police officer stops a vehicle based on probable cause that a traffic violation has occurred or was occurring the stop is not unreasonable under the Fourth Amendment to the United States constitution even if the officer had some ulterior motive for making the stop, such as a suspicion that the violator was engaging in more nefarious criminal activity. (*United States v. Ferguson* [C.A.6, 1993], 8 F.3d 385, applied and followed.)" *Dayton*

*v. Erickson*, 76 Ohio St.3d 3, 1996-Ohio-431, Syllabus by the Court.

{¶ 7} Probable cause to arrest exists when a reasonably prudent person would believe that the person to be arrested has committed a crime. *State v. Timson* (1974), 38 Ohio St.2d 122.

{¶ 8} *Dayton v. Erickson* does not require full probable cause for a traffic stop. In that case, the Supreme Court relied on the fact that an officer had probable cause of a traffic code violation, an observed failure to signal when turning left, to reject the defendant's claim that the stop was unconstitutional because it was a pretext to investigate a suspicion that her driving privileges had been suspended. *Erickson* did not reject the lesser reasonable and articulable suspicion standard of *Terry v. Ohio* (1967), 391 U.S. 1, 20 L.Ed.2d 889, 88 S.Ct. 1868. We have held that the *Terry* standard likewise applies to permit a stop for a suspected violation of the traffic code arising from conduct which an officer observes. *State v. Buckner*, Montgomery App. No. 21892, 2007-Ohio-4329.

{¶ 9} Evidence introduced at the hearing on Defendant's motion to suppress shows that the stop of Defendant's vehicle occurred on October 23, 2009, in Dayton, at about 7:00 p.m. Dayton Police Officers Dedrick and Gustwiller were then on patrol and assigned to the "Phoenix Project." Officer Dedrick described the Phoenix Project as "a project that was put in place by Good Samaritan

Hospital Citywide Development in partnership with the Dayton Police Department, attempting to improve the neighborhood that surrounds Good Samaritan Hospital." (T. 6).

{¶ 10} As the officers were driving eastbound on Hillcrest Avenue they saw a green Chevrolet Beretta traveling ahead of them approach the intersection of Hillcrest and Salem Avenues. Traffic on Hillcrest was stopped for a red light. The Beretta came to a stop parallel to another vehicle on its right side, which was preparing to turn left onto Salem Avenue. Officer Dedrick testified:

{¶ 11} "There at that intersection at West Hillcrest and Salem Avenue it's fairly wide. It is a double-lined marking on the pavement; I mean there's no passing there. The width of the lane is big enough for two vehicles to fit through." (T. 7).

{¶ 12} When the light changed, the Beretta drove through the intersection on the right side of the turning vehicle. Traffic was proceeding from the opposite direction on Hillcrest Avenue, through the intersection. Officer Dedrick testified: "By passing the vehicle around the right side and continuing straight through the intersection, it creates a hazard to the westbound travel – traveling vehicles if they were to turn left to go south on Salem. It's a hazard for an accident." (T. 8). The officers concluded that the driver of the Beretta committed a minor misdemeanor (T.

28-29), which was "passing on the right" (T. 34), and they initiated a traffic stop to issue the driver a citation.

{¶ 13} The officers activated the overhead lights and siren of their cruiser. They also used the public address system to direct the driver of the Beretta to stop. The trial court found that the Beretta "did not immediately stop and came to a stop at the next intersection only when a car in the street obstructed the path of the (Beretta)." (T. 57).

{¶ 14} The trial court further found that the traffic at the intersections of Hillcrest and Salem Avenues "was heavy," and that the officers "observed eastbound on West Hillcrest a green Chevy Beretta on the right side of the lane in an area that was not for passing. Essentially they observed the green Beretta pass on the right side where there is one lane; there is no separate passing lane. There is only one lane of travel on eastbound Hillcrest." (T. 57).

{¶ 15} The court also noted that the officers believed that Defendant's vehicle "created a hazard by going around a vehicle that was turning" (T. 58), presenting "a reasonable suspicion to stop (Defendant's) vehicle." (T. 60). The court concluded: "Defendant was issued a ticket for passing on the right. He was arrested for failure to comply, a misdemeanor." (T. 59). His arrest led to the inventory search of his vehicle that produced

the evidence which Defendant's motion sought to suppress.

{¶ 16} R.C. 4511.28 does not prohibit passing on the right side of another vehicle which is turning left when the passing vehicle is proceeding "[u]pon a roadway with unobstructed pavement of sufficient width for two or more <u>lines</u> of vehicles moving lawfully in the direction being traveled by the overtaking vehicle." (Emphasis supplied). Contrary to the trial court's suggestion, the exception that section provides is not limited to a roadway divided into two marked <u>lanes</u> proceeding in the same direction.

{¶ 17} Officer Dedrick testified that the lane through which Defendant's vehicle passed to the right of the vehicle turning left "is fairly wide" and that "[t]he width of the lane is big enough for two vehicles to pass through." Further, any perceived hazard that may have posed to vehicles turning across Defendant's path from the opposite direction would not be chargeable to Defendant because, as between them, Defendant would have had the right-of-way. R.C. 4511.42(A). The officers who stopped Defendant were charged with knowledge of the law in that respect. In order for a reasonable and articulable suspicion necessary for a traffic stop to exist, there must be objective evidence that the officer's action was justified at its inception. *Terry v. Ohio* (1968), 392 U.S. 1, 29 L.Ed.2d 889, 88 S.Ct. 1868. Good faith is not enough. "If subjective good faith alone were the test,

the protections of the Fourth Amendment would evaporate, and the people would be 'secure in their persons, houses, papers, and effects' only in the discretion of the police." *Id.*, at p. 22, quoting *Beck v. Ohio* (1964), 379 U.S. 89, 97, 13 L.Ed.2d 14, 85 S.Ct. 223. Therefore, the trial court erred when it found that the officers acted on a reasonable suspicion that Defendant's conduct violated R.C. 4511.28.

{¶ 18} The trial court did not deny Defendant's motion to suppress on the basis of its findings concerning Defendant's violation of R.C. 4511.28, however. Rather, the court approved the inventory search following Defendant's arrest for a violation of R.C. 2921.33(A). That section provides:

{¶ 19} "No person shall fail to comply with any lawful order or direction of any police officer invested with authority to direct, control, or regulate traffic."

{¶ 20} Defendant argues that his arrest for a violation of R.C. 2921.331(A), "failure to comply," was tainted by the lack of a reasonable suspicion that he committed a violation of R.C. 4511.28, and therefore the trial court should have suppressed evidence seized in an inventory search of his vehicle following his arrest. Defendant relies on the derivative evidence rule, which holds that evidence is illegally seized, and must be suppressed, when its discovery was the product of a constitutional violation.

"There must be a causal connection between the constitutional violation and the derivative evidence for the latter to be suppressed. This stands to reason because the latter is excluded solely because of its connection to the constitutional violation." Katz, "Ohio Arrest, Search and Seizure," 2008 Ed., §28:3. If knowledge of the derivative evidence is gained from an independent source, rather than the government's own illegality, the derivative evidence may be used. *Silverthorne Lumber Co. v. United States* (1920), 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319.

{¶ 21} In *State v. Redd*, Montgomery App. No. 20284, 2004-Ohio-4689, we wrote, at ¶19:

{¶ 22} "[T]he 'lawful order' of a police officer that R.C. 2921.331(A) contemplates, and with which an offender fails to comply in order for a violation to occur, is one that involves the offender's act or omission in operating a motor vehicle which, by law, an officer is charged with authority to direct, control, or regulate. The manner of that operation need not be unlawful. It is only necessary that the officer be charged by law with authority to direct it and that the offender fails to comply with the officer's particular direction."

{¶ 23} Officer Dedrick testified that he and his partner were "assigned to patrol operations" (T. 6) and that he "is an officer charged with traffic enforcement in the City of Dayton." (T. 37).

Therefore, the "order" the officers issued to Defendant to stop his vehicle was a lawful order for purposes of R.C. 2921.331(A), and Defendant's failure to comply demonstrated probable cause of a violation of that section.

{¶ 24} The violation of R.C. 2921.331(A) and Defendant's resulting arrest were sources of knowledge of the evidence Defendant's motion sought to suppress that were independent of any constitutional violation the initial reason to stop his vehicle may have involved.   The failure to stop followed the constitutional violation, but its occurrence was the product of Defendant's subsequent illegal conduct in not stopping.   It is, conceptually, no different from the discovery of an outstanding warrant following an illegal stop, which we have held does not support suppression of evidence seized in a search incident to a resulting arrest. *State v. Walker-Stokes*, 180 Ohio App.3d 36, 2008-Ohio-6552.   The trial court did not err when it overruled Defendant's motion to suppress evidence.

{¶ 25} The assignment of error is overruled.   The judgment of the trial court will be affirmed.

DONOVAN, J., concurs.

FAIN, J., concurring in the judgment:

{¶ 26} I concur in the judgment because I am satisfied that Dayton police officers Dedrick and Gustwiller had a reasonable,

articulable suspicion justifying their stop of the vehicle Adams was driving, based upon a possible violation of R.C. 4511.28, which prohibits passing another vehicle on the right if it cannot be done safely. Under the conditions described by Officer Dedrick, it may be problematic whether Adams could have been convicted of that offense, but I am satisfied that the officers had a reasonable and articulable suspicion sufficient to justify a stop.

{¶ 27} I am less sanguine about a justification of a stop based upon a failure to stop, without more. Possibly, a failure to stop, without more (such as speeding away, or driving recklessly), may justify a stop, but there is a catch-22 aspect of such a holding that troubles me.

{¶ 28} I do not find helpful an analogy to an otherwise unjustified stop where one of the occupants of a car is, in fact, the subject of an outstanding arrest warrant, even though the stopping police officer is not aware of the warrant. In that case, a basis for the stop already exists at the time that the officers make the decision to make the stop. But where officers signal a motorist to stop, and the motorist, in response, does not stop, and there was no basis for the stop before the signal to stop is given, it seems to me that the officers have created, out of nothing, a basis for the stop.

{¶ 29} I reiterate that I am not prepared to take a position,

one way or the other, on whether a motorist's failure to stop, without more, may serve as a lawful basis for a stop. It is a conundrum I find unnecessary to resolve in this case, since I am satisfied that the suspicion of a violation of R.C. 4511.28, by itself, was a sufficient basis for the stop.

Copies mailed to:

Laura M. Woodruff, Esq.
Mark A. Deters, Esq.
Hon. Mary K. Huffman