236 P.3d 1201

The STATE of Arizona, Appellee,

v.

Michael Quincy HUMMONS, Appellant.

No. 2 CA–CR 2009–0281.

Court of Appeals of Arizona,
Division 2, Department B.

July 29, 2010.

Terry Goddard, Arizona Attorney General By Kent E. Cattani and Laura Chiasson, Tucson, Attorneys for Appellee.

Robert J. Hirsh, Pima County Public Defender By M. Edith Cunningham, Tucson, Attorneys for Appellant.

## OPINION

VÁSQUEZ, Presiding Judge.

¶ 1 After a jury trial, appellant Michael Hummons was convicted of possession of a narcotic drug and possession of drug paraphernalia. The trial court sentenced him to concurrent, mitigated terms of imprisonment, the longest of which was three years. On appeal, he argues the court erred in denying his motion to suppress the drug-related evidence on which the convictions were based, contending the evidence was obtained as a result of an illegal detention. For the reasons stated below, we affirm.

## Factual and Procedural Background

¶ 2 "In reviewing a trial court's decision on a motion to suppress, we view the facts in the light most favorable to upholding the trial court's ruling and consider only the evidence presented at the suppression hearing." State v. Teagle, 217 Ariz. 17, ¶ 2, 170 P.3d 266, 269 (App.2007). On August 22, 2008, Tucson police officer Martha Lewis saw a man, later identified as Hummons, walking on the sidewalk wearing "disheveled" clothes, "as though he were homeless," and carrying what appeared to be a "very new" weed trimmer and a neatly wound extension cord. She pulled her patrol vehicle alongside him, got out, and asked if she could talk to him. Hummons stopped and "seemed cooperative." When Lewis asked him where he was going, Hummons replied he was coming from his house, but when she asked him where he lived he pointed in the same direction he had been walking. When Lewis told him she did not understand, he said he had two houses. She then asked Hummons about the weed trimmer, and he told her it was his and he

was out working. However, the trimmer appeared to be clean, and during the conversation Hummons appeared nervous and did not look directly at Lewis. Lewis then asked him for some identification, and he "willingly" provided his Arizona identification card.

¶ 3 Lewis retained the identification card for five to ten minutes while she conducted a warrants check. Although she discovered Hummons had an outstanding arrest warrant, because it was a misdemeanor warrant, she intended merely to "[l]et him know he had a warrant and that he needed to take care of it" and allow him to leave. But once she told Hummons about the warrant, he began "yelling and screaming" at her that "all cops are the same and always harassing him" and that she had stopped him "because he [wa]s black." Lewis then decided to arrest him pursuant to the warrant because "he wouldn't be quiet" and "just kept saying that stuff over and over." She handcuffed him and detained him until the warrant could be confirmed, at which point she arrested him. Searching Hummons and his backpack incident to the arrest, Lewis found drugs and drug paraphernalia.

¶ 4 Hummons was charged with possession of a narcotic drug—cocaine—and possession of drug paraphernalia. Before trial, he filed a motion to suppress all of the drug-related evidence, arguing the officer had detained him illegally and thus the evidence had not been obtained lawfully. After a hearing, the trial court denied the motion, finding Lewis's counter with Hummons had been "consensual." A jury found Hummons guilty of both charges, and he was sentenced as noted above. This appeal followed.

## Discussion

¶ 5 As the sole issue on appeal, Hummons argues the trial court erred in denying his motion to suppress the drug and paraphernalia evidence obtained during the search incident to his arrest because Lewis had detained him without reasonable suspicion he had engaged in criminal activity. "Because the Fourth Amendment prohibits only unreasonable seizures, the first step in analyzing an alleged Fourth Amendment violation is determining whether a seizure oc-

curred." *State v. Childress*, 222 Ariz. 334, ¶ 10, 214 P.3d 422, 426 (App.2009); *see Terry v. Ohio*, 392 U.S. 1, 16, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Only when an encounter between a police officer and an individual is not consensual, or the officer's conduct " 'would have conveyed to a reasonable person that he or she was not free to ___ terminate the encounter,' " is the individual seized within the meaning of the Constitution. *State v. Canales*, 222 Ariz. 493, ¶ 6, 217 P.3d 836, 838 (App.2009), *quoting United States v. Hernandez*, 93 F.3d 1493, 1498 (10th Cir.1996). And a detention violates the Fourth Amendment if it is not based on " 'a reasonable suspicion supported by articulable facts that criminal activity may be afoot.' " *In re Ilono H.*, 210 Ariz. 473, ¶ 4, 113 P.3d 696, 697 (App.2005), *quoting United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989). Although we defer to the trial court's factual findings, we review de novo its legal conclusion that the Fourth Amendment was not violated. *In re Tiffany O.*, 217 Ariz. 370, ¶ 9, 174 P.3d 282, 285 (App.2007).

■ ¶ 6 Hummons argues that even if his initial contact with Officer Lewis was consensual, her retention of his identification for five to ten minutes while she ran a warrants check transformed the encounter into a detention for which she lacked the necessary reasonable suspicion. The state counters that Hummons "has identified nothing about the circumstances surrounding the encounter that transformed it from being consensual into a seizure."[1] "A seizure is not established by a mere request for identification, nor by the initial holding and review of such documentation." *United States v. Tavolacci*, 895 F.2d 1423, 1425 (D.C.Cir.1990) (citations omitted). But an officer's "retention of [identification] papers under some

circumstances may transform an interview into a seizure, where it is prolonged or is accompanied by some other act compounding an impression of restraint," *id.* at 1425–26, because, under such circumstances, "a reasonable person would not feel free to depart," *United States v. Chan–Jimenez*, 125 F.3d 1324, 1326 (9th Cir.1997). *See also United States v. Jordan*, 958 F.2d 1085, 1088 (D.C.Cir.1992) (rejecting lower court's reasoning that officer's retention of identification not seizure because "nothing prevented the defendant from asking for [it] back and proceeding on his way"); *State v. Daniel*, 12 S.W.3d 420, 427 (Tenn.2000) ("Abandoning one's identification is simply not a practical or realistic option for a reasonable person in modern society.").

■ ¶ 7 Once Lewis inspected Hummons's identification card, she presumably had all of the information she needed to confirm he was the person he purported to be. The subsequent computer check arguably bore no relationship to that determination. However, "whether the exclusionary rule's remedy is appropriate in a particular context ... [is] separate from the question whether the Fourth Amendment rights of the party seeking to invoke the rule were violated by police conduct." *Illinois v. Gates*, 462 U.S. 213, 223, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Thus, even assuming, without deciding, that the circumstances here amounted to a detention unsupported by reasonable suspicion, we may conclude that the trial court did not err in denying Hummons's motion to suppress if the evidence to which he objects was obtained not " 'by exploitation of [any] illegality ... [but] by means sufficiently distinguishable to be purged of the primary taint.' " *United States v. Green*, 111 F.3d 515, 520 (7th Cir.1997), *quoting Wong Sun v. United States*, 371 U.S. 471, 488, 83 S.Ct. 407, 9

---

1. The state does not argue alternatively that if the encounter transformed into a detention it was supported by reasonable suspicion, and our disposition of the case does not require us to resolve this issue. We therefore do not address it. Similarly, we need not address Hummons's contention that "[e]ven assuming that [his] seizure was permissible under the Fourth Amendment, it violated Article II, section 8 of the Arizona Constitution." Hummons concedes that "Arizona courts have not yet held that Article II, section 8 pro-

vides greater protection against searches and seizures outside the home-search context," and he provides no basis in Arizona law for us to do so here. *State v. Juarez*, 203 Ariz. 441, ¶ 14, 55 P.3d 784, 787–88 (App.2002) ("[E]xcept in cases involving 'unlawful' warrantless home entries, Arizona courts have not yet applied Article 2, Section 8 to grant broader protections against search and seizure than those available under the federal constitution.").

L.Ed.2d 441 (1963). This is a legal question we review de novo. *See State v. Monge,* 173 Ariz. 279, 281, 842 P.2d 1292, 1294 (1992).

¶ 8 "Evidence may be sufficiently distinguishable to be purged of the primary taint' [of a constitutional violation] if 'the causal connection between [the] illegal police conduct and the procurement of [the] evidence is so attenuated as to dissipate the taint of the illegal action.' " *Green,* 111 F.3d at 521, *quoting United States v. Liss,* 103 F.3d 617, 620 (7th Cir.1997). In making such a determination, we consider "(1) the time elapsed between the illegality and the acquisition of the evidence; (2) the presence of intervening circumstances; and (3) the purpose and flagrancy of the official misconduct." *Id., citing Brown v. Illinois,* 422 U.S. 590, 603–04, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975); *see State v. Guillen,* 223 Ariz. 314, ¶ 14, 223 P.3d 658, 661 (2010); *Monge,* 173 Ariz. at 281, 842 P.2d at 1294.

¶ 9 In *Green,* police officers detained two men while they conducted a computer check for outstanding warrants. They discovered a warrant had been issued for one of the men, and in a search incident to the arrest they discovered cocaine and a gun, which were admitted as evidence in the trial of the second man. 111 F.3d at 517. On appeal, the Seventh Circuit Court of Appeals found the detention had violated the Fourth Amendment but declined to find the cocaine and the gun to be inadmissible as fruits of the illegal seizure. *Id.* at 523. Applying the three *Brown* factors, the court first noted that "only about five minutes elapsed between the illegal stop ... and the search," but that although this "weigh[ed] against finding the search attenuated[,] ... 'the time span between the police misconduct and the [search wa]s not dispositive on the question of taint.' " *Id.* at 521 (fourth alteration in *Green), quoting United States v. Fazio,* 914 F.2d 950, 958 (7th Cir.1990). Proceeding to the other two factors, the court noted there was "no evidence of bad faith on the part of the police," and although it had "concluded that the stop d[id] not meet constitutional standards, the [trial] court concluded otherwise." *Id.* at 523. It therefore found "the violation was not flagrant." *Id.* The court

further stated, "It would be startling to suggest that because the police [conducted an] illegal[ ] ... stop[ ] ..., they cannot [lawfully] arrest an [individual] who is found to be wanted on a warrant." *Id.* at 521. It therefore concluded that "the lawful arrest ... constituted an intervening circumstance" which was "not outweighed by flagrant official misconduct" and thus was "sufficient to dissipate any taint caused by the illegal ... stop." *Id.; see United States v. Simpson,* 439 F.3d 490, 495 (8th Cir.2006).

¶ 10 Moreover, the court distinguished cases where "the intervening circumstance ... involves a voluntary act by the defendant, such as [a] voluntary confession or consent to search" which courts must "exercise great care in evaluating ... to ensure it is ... not the result of the earlier, and unconstitutional, police action." *Green,* 111 F.3d at 522. By contrast, it found that "[w]here a lawful arrest pursuant to a warrant constitutes the intervening circumstance,' ... it is an even more compelling case for the conclusion that the taint of the original illegality is dissipated" because "[a]ny influence the unlawful stop would have on the defendant's conduct is irrelevant." *Id.*

¶ 11 The same reasoning applies here. The time span between the retention of Hummons's identification card and the search incident to the arrest was relatively short. Although this fact weighs in favor of Hummons, "temporal proximity is scarcely outcome determinative ... [and] is often the least helpful of the three criteria." *State v. Reffitt,* 145 Ariz. 452, 459, 702 P.2d 681, 688 (1985). Turning to the second factor, Hummons's arrest pursuant to an outstanding warrant constituted an intervening circumstance sufficient to dissipate any taint caused by the stop. *See Green,* 111 F.3d at 521. Because "the arrest [wa]s lawful, a search incident to the arrest [wa]s also lawful." *See id.* Applying the third factor, there is no evidence of bad faith on the part of Officer Lewis, and, although we need not decide whether her detention of Hummons violated the Fourth Amendment, the trial court concluded it did not., In reviewing a trial court's ruling on a motion to suppress, "we will defer

to [its] assessment of witness credibility because the trial court is in the best position to make that determination." *State v. Olquin*, 216 Ariz. 250, ¶ 10, 165 P.3d 228, 230 (App. 2007). Indeed, the purpose of Lewis's initial encounter with Hummons was related to the weed trimmer and extension cord and not to conduct a search for illegal drug evidence. Thus any violation was not flagrant. *See Green*, 111 F.3d at 523. The court therefore did not err in denying Hummons's motion to suppress. *See id.; see also State v. Canez*, 202 Ariz. 133, ¶ 51, 42 P.3d 564, 582 (2002) (on appeal, trial court's ruling on motion to suppress upheld if legally correct for any reason).

### Disposition

¶ 12 For the reasons stated above, we affirm Hummons's convictions and sentences.

CONCURRING: PETER J. ECKERSTROM and VIRGINIA C. KELLY, Judges.