SUPREME COURT OF ARIZONA
En Banc

| | | |
|---|---|---|
| STATE OF ARIZONA, | ) | Arizona Supreme Court |
| | ) | No. CR-10-0309-PR |
| Appellee, | ) | |
| | ) | Court of Appeals |
| v. | ) | Division Two |
| | ) | No. 2 CA-CR 09-0281 |
| MICHAEL QUINCY HUMMONS, | ) | |
| | ) | Pima County |
| Appellant. | ) | Superior Court |
| | ) | No. CR20083448 |
| | ) | |
| | ) | |
| | ) | **O P I N I O N** |
| _____ | ) | |

Appeal from the Superior Court in Pima County
The Honorable Teresa A. Godoy, Judge Pro Tem

**AFFIRMED**
_____

Opinion of the Court of Appeals Division Two
225 Ariz. 254, 236 P.3d 1201 (App. 2010)

**VACATED**
_____


THOMAS C. HORNE, ARIZONA ATTORNEY GENERAL                    Phoenix
     By    Kent E. Cattani, Chief Counsel,
           Criminal Appeals/Capital Litigation Section
           Laura P. Chiasson, Assistant Attorney General    Tucson
Attorneys for State of Arizona

ROBERT J. HIRSH, PIMA COUNTY PUBLIC DEFENDER                 Tucson
     By    Lisa M. Hise, Assistant Public Defender
Attorneys for Michael Quincy Hummons
_____


**B R U T I N E L**, Justice

¶1        Michael Hummons was convicted of possessing a narcotic

drug and drug paraphernalia. The court of appeals affirmed, holding that the trial court did not err in denying a motion to suppress evidence found during a search incident to arrest. Assuming Hummons had been illegally detained, the court of appeals found that the arresting officer's search was incident to an arrest on an outstanding warrant and, therefore, sufficiently attenuated from the illegal detention so as to avoid suppression. *State v. Hummons*, 225 Ariz. 254, 257-58 ¶¶ 8-11, 236 P.3d 1201, 1204-05 (App. 2010). We granted review to address the attenuation doctrine as applied to warrant checks resulting in arrest. We have jurisdiction pursuant to Article 6, Section 5(3) of the Arizona Constitution and A.R.S. § 12-120.24.

## I. FACTS AND PROCEDURAL BACKGROUND

¶2     "We view the facts in the light most favorable to support the trial court's ruling on the motion to suppress." *State v. Cook*, 115 Ariz. 188, 192, 564 P.2d 877, 881 (1977). In analyzing a ruling on a motion to suppress, we consider "only the evidence presented at the suppression hearing." *State v. Garcia*, 224 Ariz. 1, 7 ¶ 6, 226 P.3d 370, 376 (2010).

¶3     In August 2008, Tucson Police Officer Martha Lewis was on patrol, when she noticed Hummons walking down the sidewalk carrying a new-looking weed trimmer with a neatly wrapped extension cord. Hummons caught her attention because his

2

disheveled appearance contrasted with the pristine equipment he was carrying. Additionally, the officer was aware of recent thefts from nearby yards.

¶4 Officer Lewis approached Hummons to determine who he was and what he was doing. Hummons agreed to speak with her and was polite, but appeared nervous and avoided eye contact. Hummons said he was coming from his house; but when asked where he lived, he pointed in the direction in which he had been walking. After Officer Lewis expressed confusion, Hummons said he owned two homes and was out doing work with the weed trimmer. She noted that the weed trimmer did not look as if it had been used. She then asked to see his identification card, which Hummons voluntarily provided. While holding the card, the officer conducted a warrant check.[1]

¶5 Although the warrant check revealed a misdemeanor arrest warrant, Officer Lewis decided to tell Hummons about the warrant, but not arrest him. As she began to explain, however, he became belligerent and she opted to arrest him on the warrant. In a search incident to that arrest, Officer Lewis discovered drugs and drug paraphernalia in his backpack.

¶6 Hummons moved to suppress this evidence, arguing that

---

[1]It is unclear how long the warrant check took. Officer Lewis testified that the warrant search took place five to ten minutes into her discussion with Hummons and also that the entire interaction lasted no more than ten minutes.

it was obtained as the result of an illegal detention. The trial court denied the motion, finding the officer's encounter with Hummons consensual. Without addressing the consent issue, the court of appeals affirmed, concluding that even if Hummons had been illegally detained during the warrant check, the discovery of the arrest warrant constituted an intervening circumstance that dissipated the taint of any prior illegality. *Hummons*, 225 Ariz. at 257-58 ¶¶ 8-11, 236 P.3d at 1204-05.

## II.    DISCUSSION

### A.    Attenuation Doctrine

¶7      Law enforcement officers have wide latitude to approach people and engage them in consensual conversation. *See Florida v. Royer*, 460 U.S. 491, 497 (1983) (holding officers do not violate Fourth Amendment by approaching citizen in public place and asking permission to question). They are also free to request identification. *See I.N.S. v. Delgado*, 466 U.S. 210, 216, 218 (1984) (holding law enforcement request for identification not tantamount to seizure; finding no constitutional violation when law enforcement conduct "consisted simply of questioning employees and arresting those they had probable cause to believe were unlawfully present"); *see also Hiibel v. Sixth Judicial Dist. Court of Nev., Humboldt County.*, 542 U.S. 177, 188-89 (2004) (upholding state law requiring disclosure of identity to officers); *Florida v. Bostick*, 501

4

U.S. 429, 437 (1991) (explaining no seizure occurs when police ask to examine identification). If an officer engaging in a consensual encounter with a citizen discovers an arrest warrant, the arrest is valid and any evidence discovered during a search incident to arrest is admissible. *See United States v. Robinson*, 414 U.S. 218, 235 (1974) (emphasizing that search incident to arrest requires no additional justification). Consent, however, is the hallmark of such an encounter.

¶8 Although the trial court found Officer Lewis's encounter with Hummons consensual, the court of appeals assumed, without deciding, that Officer Lewis illegally detained Hummons before discovering the warrant and then arresting and searching him. The court therefore considered whether the search was sufficiently attenuated from any illegal detention so as to allow the seized evidence to be admitted.

¶9 In *Brown v. Illinois*, the Supreme Court applied three factors to determine whether the taint of illegal conduct is sufficiently attenuated from a subsequent search to avoid the exclusionary rule. 422 U.S. 590, 603-04 (1975). Under *Brown*, a court must consider first, the time elapsed between the illegality and the acquisition of evidence; second, the presence of intervening circumstances; and third, the purpose and flagrancy of the official misconduct. *Id*. Although *Brown* involved a confession following an illegal search, Arizona

5

courts have applied the attenuation doctrine to other situations. *See, e.g.*, *State v. Guillen*, 223 Ariz. 314, 317 ¶ 14, 223 P.3d 658, 661 (2010) (applying attenuation doctrine to consent search following allegedly illegal search); *State v. Blackmore*, 186 Ariz. 630, 634-35, 925 P.2d 1347, 1351-52 (1996) (upholding search following allegedly illegal arrest); *State v. Miller*, 186 Ariz. 314, 320-21, 921 P.2d 1151, 1157-58 (1996) (upholding admission of statements made after illegal arrest).

¶**10**     The court of appeals correctly determined that the first *Brown* factor favored suppression.  The officer discovered the drugs and paraphernalia shortly after the stop.  But, as the court of appeals correctly noted, this is the least important *Brown* factor.  *See State v. Reffitt*, 145 Ariz. 452, 459, 702 P.2d 681, 688 (1988); *see also McBath v. State*, 108 P.3d 241, 248 (Alaska 2005) (noting that "in essentially every case," the time between an illegal stop and the discovery of evidence is short).

¶**11**     Regarding *Brown*'s second factor, the discovery of a valid arrest warrant is an intervening circumstance because it provides a legal basis for the arrest notwithstanding an illegal seizure.  *See* Ariz. R. Crim. P. 3.1(c) (warrant issued upon probable cause); 3.3(b) (warrant executed by arrest of defendant); *see also People v. Murray*, 728 N.E.2d 512, 517 (Ill. App. Ct. 2000) (holding it would be "illogical and nonsensical"

6

to suggest police cannot arrest subject of illegal detention after discovery of valid warrant).  A law enforcement officer who previously lacked even reasonable suspicion, by discovering a valid warrant, gains probable cause not just to detain, but to arrest.  *Cf. Whiteley v. Warden, Wyo. State Penitentiary*, 401 U.S. 560, 568-69 (1971) (holding invalid warrant did not create probable cause for arrest).  If the warrant is valid, the arrest is valid regardless of how the individual officer came to know about the warrant.  *See United States v. Hudson*, 405 F.3d 425, 439 (6th Cir. 2005) (holding that initial illegal detention "does not call into question" validity of arrest pursuant to valid warrant; "[w]here the police effectuate an arrest in an illegal manner but nonetheless have probable cause to make the arrest, the proper Fourth Amendment remedy is to exclude only that evidence which is a fruit of the illegality"); *see also State v. Spreitz*, 190 Ariz. 129, 144, 945 P.2d 1260, 1275 (1997) (holding that as long as officers possess a valid warrant, the subjective intent of officers is irrelevant).

¶12      The court of appeals, however, overemphasized the importance of the warrant as an intervening circumstance in attenuating an illegal detention's taint upon evidence discovered in a search incident to arrest.  *See Hummons*, 225 Ariz. at 257 ¶ 11, 236 P.3d at 1204 (citing *United States v. Green*, 111 F.3d 515, 521 (7th Cir. 1997)) (holding existence of

arrest warrant "compelling" case for finding dissipation). If the purpose of an illegal stop or seizure is to discover a warrant— in essence, to discover an intervening circumstance— the fact that a warrant is actually discovered cannot validate admission of the evidence that is the fruit of the illegality. *See People v. Mitchell*, 824 N.E.2d 642, 644, 649 -50 (Ill. App. Ct. 2005) (affirming suppression of evidence when "officers stopped defendant for no apparent reason other than to run a warrant check").

¶13      If, as the court of appeals suggested, a warrant automatically dissipated the taint of illegality, law enforcement could then "create[] a new form of police investigation" by routinely illegally seizing individuals, knowing that the subsequent discovery of a warrant would provide after-the-fact justification for illegal conduct. *United States v. Gross*, 624 F.3d 309, 320-21 (6th Cir. 2010). We cannot reconcile such a situation with the Fourth Amendment or the logic of *Wong Sun v. United States*, 371 U.S. 471, 485 (1963) (holding evidence that derived "so immediately from" violation is fruit of illegality and should be suppressed). We therefore hold that the subsequent discovery of a warrant is of minimal importance in attenuating the taint from an illegal detention upon evidence discovered during a search incident to an arrest on the warrant.

8

¶14    The purpose and flagrancy of illegal conduct, the third *Brown* factor, however, goes to the very heart and purpose of the exclusionary rule. *See Brown*, 422 U.S. at 603-604 (finding flagrancy of misconduct "particularly" important in attenuation analysis); *see also Herring v. United States*, 555 U.S. 135, __, 129 S. Ct. 695, 701 (2009) ("The extent to which the exclusionary rule is justified by . . . deterrence principles varies with the culpability of the law enforcement conduct."); *Guillen*, 223 Ariz. at 318-19 ¶¶ 19-21, 223 P.3d at 662-63.    Courts must consider the totality of circumstances in determining whether the evidence should be suppressed. *See United States v. Wellins*, 654 F.2d 550, 554 (9th Cir. 1981) (finding of attenuation only appropriate upon consideration of totality of circumstances).    Factors such as an officer's regular practices and routines, an officer's reason for initiating the encounter, the clarity of the law forbidding the illegal conduct, and the objective appearance of consent may all be important in this inquiry.    By focusing on officer conduct, courts may distinguish between ordinary encounters that happen to devolve into illegal seizures and intentionally illegal seizures for the purpose of discovering warrants.

¶15    Applying *Brown*'s third factor, and assuming Hummons was illegally detained, we hold that the totality of the circumstances militate against suppressing the evidence. *See*

9

*State v. Frierson*, 926 So.2d 1139, 1144 (Fla. 2006) (finding "very significant the third factor in the *Brown* analysis" in concluding taint of illegal stop dissipated by non-pretextual, good faith discovery of outstanding arrest warrant). No evidence at the suppression hearing indicated that Officer Lewis routinely approaches citizens in the hopes of discovering warrants in order to search them incident to arrest, nor did she stop Hummons for this reason. Rather, she was engaged in other police business when he caught her attention because he was carrying new lawn equipment, yet appeared disheveled and was in an area where there had recently been thefts from yards. She approached Hummons, as she had the right to do, and engaged him in consensual conversation. When he made confusing statements, she asked to see his identification. While retaining his identification, she conducted a quick check for warrants in his presence.[2] Officer Lewis further testified that once she had discovered the warrant, she had intended to allow Hummons to leave without arresting him. She changed her mind only when he became belligerent. From this record, it is clear Officer Lewis did not approach Hummons with the hope of arresting and searching him, nor did she otherwise engage in purposeful or

---

[2] We do not address whether Officer Lewis had reasonable suspicion by the time she performed the warrant check- an issue neither raised by the State in the court of appeals nor decided by that court.

flagrant illegality.

**B.      State Constitutional Argument**

¶16      Hummons urges us to separately consider this matter under Article 2, Section 8 of the Arizona Constitution.  Because the exclusionary rule is applied no more broadly under our state constitution than it is under the federal constitution outside the home-search context, we decline to do so.  *See Guillen*, 223 Ariz. at 317 ¶ 13 n.1, 223 P.3d at 661 n.1.

### III.    CONCLUSION

¶17      For the foregoing reasons, we uphold the trial court's denial of Hummons' motion to suppress evidence obtained during the search incident to arrest and affirm his conviction, but vacate the court of appeals' opinion.

_____
Robert M. Brutinel, Justice

CONCURRING:


_____
Rebecca White Berch, Chief Justice


_____
Andrew D. Hurwitz, Vice Chief Justice


_____
W. Scott Bales, Justice


_____
A. John Pelander, Justice