NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

STATE OF ARIZONA, *Appellee,*

*v.*

RODNEY WAYNE ARNOLD, *Appellant.*

No. 1 CA-CR 15-0705
FILED 6-21-2016

---

Appeal from the Superior Court in Maricopa County
No. CR2015-105867-001
The Honorable Virginia L. Richter, Judge *Pro Tempore*

**AFFIRMED**

---

COUNSEL

Arizona Attorney General's Office, Phoenix
By Christopher M. DeRose
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Paul J. Prato
*Counsel for Appellant*

## MEMORANDUM DECISION

Judge Maurice Portley delivered the decision of the Court, in which Presiding Judge Samuel A. Thumma and Judge John C. Gemmill joined.

**P O R T L E Y**, Judge:

**¶1**        Rodney Arnold ("Arnold") appeals the superior court's denial of his motion to suppress.  For the following reasons, we affirm.

### FACTS[1] AND PROCEDURAL HISTORY

**¶2**        Early one morning in February 2015, a Mesa police officer was dispatched to a house after the police received a phone call reporting there was "a suspicious person looking around the [caller's] house and looking over the fence into their backyard."  The caller described the man as a middle-aged "black male wearing blue jeans and a dark colored shirt with a baseball cap and a wood[en] cane," and reported the man kept coming up to his front door and saying that he "was looking for his girlfriend and getting some clothes for her."  Because the caller did not know the man or his girlfriend, he repeatedly asked the man to leave.

**¶3**        After arriving, the officer saw a man, who was later identified as Arnold and matched the reported description, walking with a cane through an adjacent dirt lot back toward the caller's house.  The officer parked his patrol car, and accompanied by his field training officer ("FTO"),[2] approached Arnold and asked him, "what [is] going on today[?]"  Arnold said he "was trying to find his girlfriend's house because he had to pick up clothes for her."  The officer then asked Arnold some additional questions, including whether he had any identification.  Arnold provided his identification, and a "warrants and driver's license check[]" revealed that Arnold "had a warrant out of Maricopa County for marijuana."  The officer placed Arnold under arrest, searched him, and found a "small crystal like substance," as well as a "glass pipe [with] with white and black

_____

[1] "In reviewing the denial of a motion to suppress evidence, we view the facts in the light most favorable to upholding the trial court's ruling." *State v. Wyman*, 197 Ariz. 10, 12, ¶ 2, 3 P.3d 392, 394 (App. 2000) (citation omitted).
[2] The FTO was present because the officer had only recently graduated from the police academy.

residue," in Arnold's pockets. The substance was later identified to be methamphetamine.

**¶4** The State charged Arnold with possession or use of dangerous drugs, and possession of drug paraphernalia. The State also alleged aggravating circumstances. Arnold filed a motion to suppress the evidence, but, after an evidentiary suppression hearing, the superior court denied the motion.

**¶5** The case proceeded to trial and a jury found Arnold guilty as charged. The superior court, after finding that the State had proven beyond a reasonable doubt that Arnold had seven prior felony convictions, sentenced him to prison for eight years for drug possession and a concurrent term of three years for paraphernalia possession, mitigated terms. Arnold appealed, and we have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, and Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1), 13-4031, and -4033(A)(1).

## DISCUSSION

**¶6** In reviewing the denial of a motion to suppress evidence based on an alleged Fourth-Amendment violation, "we defer to the trial court's factual findings, but we review *de novo* mixed questions of law and fact and the trial court's ultimate legal conclusion." *State v. Wyman*, 197 Ariz. 10, 13, ¶ 5, 3 P.3d 392, 395 (App. 2000) (citations omitted). "[W]e consider only the evidence presented at the suppression hearing," *State v. Hummons*, 227 Ariz. 78, 79, ¶ 2, 253 P.3d 275, 276 (2011) (internal quotation marks and citation omitted), and we will affirm the ruling if it was correct for any legal reason, *see State v. Aguilar*, 228 Ariz. 401, 403, ¶ 12, 267 P.3d 1193, 1195 (App. 2001) (citation omitted).

**¶7** The Constitution provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." *U.S. v. Mendenhall*, 466 U.S. 544, 550 (1980) (quoting U.S. Const. amend. IV). "A person is seized by the police and thus entitled to challenge the government's action under the Fourth Amendment when the officer, by means of physical force or show of authority, terminates or restrains his freedom of movement." *Brendlin v. California*, 551 U.S. 249, 254 (2007) (citations and internal quotation marks omitted). Not all interactions, however, between police officers and citizens implicate the Fourth Amendment, *State v. Canales*, 222 Ariz. 493, 494, ¶ 6, 217 P.3d 836, 837 (App. 2009) (citations omitted), and, "[o]bviously, not all personal intercourse between policemen and citizens involves 'seizures' of

persons," *Terry v. Ohio*, 392 U.S. 1, 20 n.16 (1968). Moreover, "[i]n the ordinary course a police officer is free to ask a person for identification without implicating the Fourth Amendment." *Hiibel v. Sixth Judicial Dist. Court of Nev., Humboldt Cty.*, 542 U.S. 177, 185 (2004).

**Denial of the Motion to Suppress**

¶8        Arnold argues "[t]he evidence does not support the implicit finding by the trial court that [his] interaction" with the police officers constituted a consensual encounter. As a result, he claims the investigatory stop violated his Fourth-Amendment rights "because [the] officers did not have the reasonable, articulable suspicion that criminal activity was afoot" to justify the stop.

¶9        An arrest, "the quintessential 'seizure of the person' under our Fourth Amendment jurisprudence," *California v. Hodari D.*, 499 U.S. 621, 624 (1991), requires either physical force or submission to the assertion of authority, *id.* at 626. The test to determine whether there was a show of authority is objective; it does not ask "whether the citizen perceived that he was being ordered to restrict his movement," but, rather, "whether the officer's words and actions would have conveyed that to a reasonable person." *Id.* at 628. Moreover, "no seizure occurs when police ask questions of an individual, ask to examine the individual's identification, and request consent to [conduct a] search . . . so long as the officers do not convey a message that compliance with their requests is required." *Florida v. Bostick*, 501 U.S. 429, 437 (1991). And as long as a reasonable person "would feel free to disregard the police and go about his business, the encounter is consensual and no reasonable suspicion is required." *Id.* at 434 (internal quotation marks and citation omitted).

¶10        Here, after the officer saw Arnold walking through the lot, he pulled over, walked up to Arnold, and "asked him if he could talk." Arnold stopped and, in the presence of the FTO, the officer asked Arnold some "initial questions." After two other officers arrived, the officer asked Arnold "if he had ID on him," and Arnold said "yeah." The time between the initial contact with Arnold and the discovery of the warrant was no more than five minutes.

¶11        The officer did not command Arnold to stop and talk to him, apply force to get him to stop, place handcuffs on him, or draw his weapon. Nor did he activate his vehicle lights or sirens before exiting his vehicle and approaching Arnold. In sum, there is no evidence that the officer talking with Arnold, the FTO, or any of the other officers who arrived, indicated to

Arnold either through a showing of authority or by physical force, that he *had* to comply with the officer's request to speak to him or that he *had* to produce his identification. Arnold was free to ignore their requests, but did not.

**¶12** Police officers "have wide latitude to approach people and engage them in consensual conversation," *Hummons*, 227 Ariz. at 80, ¶ 7, 253 P.3d at 277, and they "are also free to request identification," *id.* As a result, there was no seizure. And because "[i]f an officer engaging in a consensual encounter with a citizen discovers an arrest warrant, the arrest is valid and any evidence discovered during a search incident to arrest is admissible," the court properly denied the motion to suppress. *Id.* Consequently, Arnold has shown no error.[3]

**CONCLUSION**

**¶13** Based on the foregoing, we affirm the court's denial of Arnold's motion to suppress.



Ruth A. Willingham · Clerk of the Court
FILED: AA

---

[3] Because we find the encounter was consensual, we need not address the State's alternative arguments.